DETROIT UNITED RAILWAY *v.* CITY OF DETROIT.

1. COURTS—RES JUDICATA—DECISION IN FEDERAL COURT CONTROLLING—STREET RAILWAYS—MUNICIPAL CORPORATIONS—INJUNCTION.

Where bills were filed contemporaneously in the Federal and State courts by a street railway company to enjoin the construction of a street railway by the city of Detroit, attacking the validity of an election authorizing same, and pending an appeal to this court the case was decided adversely to said company by the Federal Supreme Court, said decision is *res adjudicata,* not only upon the question of jurisdiction but as to the validity of the election authorizing said city to establish a municipal system of street railways and to borrow money upon the credit of the city by the issuance of bonds therefor.

2. INJUNCTION—MOOT QUESTION—IMPOSSIBLE RELIEF.

Where, at the time the case was heard the contract for the construction of a concrete roadbed, sought to be enjoined, had been completed and paid for, it was beyond the power of the court to grant the injunctive relief asked for, since it could not by injunction restrain what had already been done.

Appeal from Wayne; Mandell (Henry A.), J. Submitted January 18, 1921. (Docket No. 84.) Decided June 6, 1921:

Bill by the Detroit United Railway against the city of Detroit and others to enjoin the performance of a contract for the construction of a street railway. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Stevenson, Carpenter & Butzel* (*P. J. M. Hally* and *H. E. Spalding,* of counsel), for plaintiff.

*Clarence E. Wilcox,* Corporation Counsel, for defendants.

STEERE,   C. J.   Chapter xiii, tit. iv, of the Detroit city charter, makes provision for acquisition and operation of a municipal street railway system by the city, and the issuance of public utility bonds to purchase or construct the same when authorized by an affirmative vote of three-fifths of the electors of said city. Such charter provision is authorized by the so-called home rule act (Act No. 279, Pub. Acts 1909, as amended [1 Comp. Laws 1915, § 3304 *et seq.*]) and Article 8 of the State Constitution.

On January 27, 1920, the common council of Detroit adopted an ordinance relative to the city acquiring, owning and operating a street railway upon certain of its designated thoroughfares, declaring the same a necessary public improvement, and providing for submitting the proposition, including authority to borrow not exceeding $15,000,000 upon credit of the city by issuance of public utility bonds therefor, to the electors of the city at a special election to be held April 5, 1920. At the election duly called and held on that date for such purpose the proposition prevailed by a vote of over three-fifths of the electors.

On April 13, 1920, the board of street railway commissioners of the city requested the common council to issue $100,000 worth of the $15,000,000 public utility bonds authorized by said election of April 5th, and on the same date the council authorized the city controller to advertise for sale that amount of said bonds, bearing interest at 5 per cent. per annum payable semiannually on sealed proposals and receive bids therefor up to April 20, 1920.   On the latter date the controller reported to the council he had received three bids for said $100,000 public utility bonds, all at par and accrued interest, the bidders being the Bank of Detroit, the Joseph H. Berry Estate and the treasurer of the city of Detroit, recommending that the bid of the city treasurer be accepted.   On the same date the council

acted favorably on said recommendation, accepted the city treasurer's bid and directed the controller to prepare said issue of bonds, dated May 1, 1920, cause the same to be duly executed and recorded in his office, and "transmit the same in manner and form required by the city charter to the city treasurer to the end that said treasurer may deliver said bonds to the parties entitled thereto, and report the delivery thereof to this body."

On April 21, 1920, preparatory steps for actual work in construction of a portion of the authorized system were taken by the street railway commission. Sealed bids were invited by advertisement, to be presented on or before April 29, 1920, for construction of a stretch of concrete double track roadbed with requisite manholes, drains, back fill, etc., along Charlevoix avenue between the east line of Connors avenue and west line of Alter road. Defendant John A. Mercier was the successful bidder, at a price of $51,446.40. Award of the contract to him was confirmed by the common council on May 4, 1920, followed by a written contract, dated May 12, 1920, executed by him and the railway commission in behalf of the city, which was approved by the council on May 26, 1920.

In the meantime two injunction suits had been commenced by the Detroit United Railway against the city to restrain it from taking steps to carry out the provisions of the proposition for a municipally owned street railway voted upon April 5, 1920. The first was commenced by a bill filed in the Federal district court, eastern district of Michigan, on April 10, 1920, alleging at length on constitutional and other grounds that the proceedings taken for adoption and approval by the electorate of said ordinance and loan were invalid and that to carry the proposition into effect would be in violation of plaintiff's constitutional rights, praying "that said proposition and said ordinance be declared

invalid and void for any and all purposes," and asking both a temporary and permanent injunction.

The second suit is the instant case, and was commenced on May 12, 1920, in the circuit court of Wayne county, in chancery, by a bill to enjoin the city, certain of its officers and Mercier, the contractor, from proceeding with the proposed construction of the portion of the contemplated municipal street railway along Charlevoix avenue to the west line of Alter road, and from using to that end any funds of the city in payment for public utility bonds purporting to be authorized by electors of the city at the election on April 5, 1920, and sold to the city treasurer. The bill also attacks the validity of the whole proceeding, alleging that "there is no lawful authority for the issue by the city of any bonds or for the expenditure of any money for the acquisition or construction of street railways by the city of Detroit." The bill also charges on various grounds that the Mercier contract of May 12th for work on Charlevoix avenue and sale of public utility bonds by the city to itself to finance the same were in violation of various charter provisions and void. Both a temporary and permanent injunction are prayed for.

No temporary injunctions were granted in either of these cases, nor in the companion case of *Detroit United Railway* v. *Wayne Circuit Judge* tried jointly with the instant case and before this court on application for mandamus to compel the trial court to grant a temporary injunction after ordering the bill dismissed (212 Mich. 230). The opinion of the trial court printed in this record, dated September 3, 1920, states, referring to that case by number, that "the court rendered the following opinion covering both cases" and in conclusion directed that "a decree be entered dismissing the bill." A decree, dated November 17th, was filed November 20, 1920, sustaining the validity of

the election authorizing the city to issue public utility bonds to acquire a municipal street railway system as proposed, and the course pursued in contracting with defendant Mercier, which was held to create a valid obligation against the city. This appeal followed in due course.

In the meantime a motion in the nature of a demurrer had been made to dismiss the earlier commenced suit in the Federal district court for lack of jurisdiction and want of equity in the bill. The district court held that a Federal question was involved, but dismissed the bill for want of equity in its allegations by decree rendered July 9, 1920. From that decree appeal was taken to the United States Supreme Court, where it was pending when the instant case was appealed to this court.

On February 28, 1921, an opinion was handed down by the United States Supreme Court (Advance opinions April 1, 1921, No. 10, p. 356) affirming the decision of the district court on both the questions of jurisdiction and lack of equity, and reviewed the legal issues tendered by plaintiff's bill on their merits; amongst other things sustaining the validity of the municipal election of April 5, 1920, and concluding:

"We find nothing in the allegations of this bill establishing that the city of Detroit, in proceeding by its officials in the manner alleged, has done things which are subversive of the rights of the city to establish its own municipal system of street railways and to issue bonds for that purpose, or which would amount to deprivation of rights secured to the plaintiff by the 14th Amendment to the Federal Constitution."

That decision is clearly *res adjudicata* not only upon the question of jurisdiction but the validity of the election of April 5th authorizing the city to establish a municipal system of street railways and "to borrow money upon the credit of the city of Detroit to an

amount not exceeding fifteen million ($15,000,000) dollars by the issuance of its public utility bonds therefor." Upon that question plaintiff had contemporaneously invoked the aid of both courts by injunction bills, asking of each at the same time temporary and permanent injunctions. The paramount issue disposed of by the Federal courts basically attacking the validity of the entire municipal railway proposition is also plainly raised by plaintiff's bill in this case and argued at length in its briefs, although its counsel express doubts on, the question of jurisdiction and urge that the important question for this court is "the power of the city to convert money raised by taxation to the construction of its street railway system," referring particularly to the purchase of its own bonds with available funds in the city treasury which had been raised by taxation.

It appears that the city treasurer purchased the authorized issue of $100,000 public utility bonds by direction of the council, at a time when there was on hand over $3,000,000 cash in the city treasury, acting under the concluding provision of section 11, chap. v, title vi, p. 127, of the city charter, as follows:

"The city treasurer shall, when directed by the council, bid in behalf of the city, at par and accrued interest, for any bonds offered for sale by the city, pay therefor out of available balances in the city treasury, and resell the same at any time at not less than par and accrued interest."

Plaintiff's counsel urge that this provision does not apply to public utility bonds issued by authority of the April 5th election for municipal railway purposes, while counsel for defendant contends that it does.

As applied to this injunction suit, which involves only the Mercier contract of May 12th, that question now is, and was when the case came on for hearing in the lower court, in its nature academic since the court

could not by injunction restrain what had already been done. The contract price for the work to be done was $51,446.40. On May 29, 1920, the city controller certified on the contract, which had been approved by the council, "that an appropriation has been made to cover the expense incurred under this contract." At that time there remained in the street railway fund the sum of $57,490.24 cash, being the unexpended balance of an appropriation for the street railroad commission in the budget of 1919, besides the available proceeds of the $100,000 bond sale to the city treasurer, not then, however, credited to the railway fund.

The only relief asked in plaintiff's bill was injunctive. No temporary injunction was ever granted. Work appears to have proceeded promptly under this contract and the testimony of the chief engineer of the municipal railway system shows that the contract had been completed and paid for before the time this case was heard. It was, therefore, then beyond the power of the court to grant the injunctive relief asked for in relation to such contract.

The decree dismissing plaintiff's bill is affirmed, with costs.

MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.