FIRST NATIONAL BANK OF WYANDOTTE *v.* COMMON
COUNCIL OF CITY OF DETROIT.

1. MANDAMUS—TAXATION—DEDUCTION—REMEDY.
   Mandamus will not issue to compel city of Detroit and its board of assessors to make deductions from tax roll after it has been confirmed and passed out of their control (Detroit Charter, tit. 6, chap. 2, §§ 5, 6).

2. SAME—REFUND OF TAXES—REMEDY—DETROIT CHARTER.
   Provision of Detroit city charter (title 6, chap. 4, § 30) that council may provide by ordinance for refund of taxes illegally assessed or collected is not self-executing, and in absence of passage of such ordinance, refund may not be compelled by mandamus.

3. SAME.
    Mandamus will not issue where it will be unavailing.

4. SAME—AVAILABILITY OF MANDAMUS—STARE DECISIS.
    Citation of cases wherein availability of remedy by mandamus
    was not raised cannot have effect of making mandamus avail-
    ing in case where question is raised and when it is in fact
    and law unavailing.

ON MERITS.

5. TAXATION—DEDUCTION—SPECIFIC TAX.
    Stockholder of national bank is entitled, in fixing assessed value
    of shares, to deduction of credits secured by lien on real prop-
    erty on which specific tax had been paid under Act No. 91,
    Pub. Acts 1911 (1 Comp. Laws 1915, § 4268 *et seq.*).

6. SAME—DISCRIMINATION—CONSTITUTIONAL LAW—DOUBLE TAXA-
    TION—STATUTES.
    Provision of Act No. 322, Pub. Acts 1929, for taxation of na-
    tional bank stock without allowing deduction of credits secured
    by lien on real property on which specific tax had been paid
    is void as discriminating against national bank stock in viola-
    tion of Federal statute (12 USCA § 548), and is also void
    as double taxation under State Constitution (article 10, § 3).

Certiorari to Wayne; Campbell (Allan), J. Sub-
mitted October 7, 1930. (Calendar No. 35,142.) De-
cided January 7, 1931.

Mandamus by the First National Bank of Wyan-
dotte, Michigan, and Luther S. Trowbridge, Jr., ad-
ministrator of the estate of John J. Harris, de-
ceased, a stockholder, against the Common Council
and the Board of Assessors of the City of Detroit
to show cause why deductions from assessments
should not be made for certain credits. Judgment
for plaintiffs. Defendants bring certiorari. Re-
versed.

*Stevenson, Butzel, Eaman & Long (Thomas G.
Long,* of counsel), for plaintiffs.

*Walter Barlow* (*Clarence E. Wilcox,* of counsel), for defendants.

CLARK, J.   The board of assessors of the city of Detroit assessed, in April, 1930, shares of capital stock of the plaintiff, First National Bank of Wyandotte, Michigan, without making any deduction in respect of credits, being a large sum, consisting of bonds, notes, and other indebtedness secured by lien upon real property, upon which specific tax had been paid under Act No. 91, Pub. Acts 1911 (1 Comp. Laws 1915, § 4268 *et seq.,* 1 Comp. Laws 1929, § 3640 *et seq.*).

Plaintiff bank and the other plaintiff, one of its stockholders, appealed in writing and in due form to the common council of the city.   The appeal was denied on April 29, 1930.   The common council confirmed the assessment rolls on May 1, 1930.   On April 30, 1930, plaintiffs filed in the circuit court petition for writ of mandamus. Order to show cause issued returnable May 9, 1930.   Answer and plea and hearing were on the return day.   Plaintiffs had judgment on May 22, 1930.   Defendants review on certiorari.

Decision of a preliminary question disposes of the case.   Is mandamus a proper remedy?

The charter provides (title 6, chap. 2, § 4) that the board of assessors, having completed the review and correction of the assessment rolls, shall sign "and on the third Tuesday of April in each year return the same to the common council," being in 1930, April 15th.

The charter further provides (title 6, chap. 2, §§ 5, 6) that the common council, after receiving the assessment rolls, shall, at 10 o'clock in the morning of the first succeeding day, proceed to consider the

same, and that such consideration and the hearing of appeals may be continued from session to session for a period of not exceeding 16 days after the date of the delivery of the rolls to the council, and that—

"After due consideration thereof, said rolls shall be fully and finally confirmed by the council, and shall remain as the basis, according to property valuation, of all taxes to be levied and collected in the city until another assessment shall have been made and confirmed as herein provided."

Such confirmation, as has been said, was on May 1, 1930. The position of the defendants, board of assessors and common council, is that, after May 1, 1930, and at the time of hearing and of judgment, they had no power to make the change sought by the plaintiffs, the assessment rolls not being then under their control, or the control of either of them. But plaintiffs contend there is still power in the common council, in this regard, under the charter (title 6, chap. 4, § 30) which is:

"SEC. 30. The common council may also provide and ordain by ordinance, that whenever it shall appear that any taxes or assessments have been illegally assessed or collected, the common council may, by a vote of two-thirds of all the members-elect, direct and cause the amount so collected to be refunded out of the contingent fund, or in case it has not been collected, to vacate the assessment, and fix upon an amount, to be received in full of such tax or assessment, and no such action on the part of the council, under such ordinance, shall in any way affect or invalidate any other tax or assessment assessed, levied, or collected in said city."

It is not urged that, pursuant to this section, any ordinance, so authorized, has been passed by the

council and approved by the mayor, nor does it appear in the record. The section is not self-executing.

On this record it must be held that, at the time of the judgment in mandamus, neither the board of assessors nor the common council had authority to do that which they were commanded. It is a general rule that mandamus will not issue where it will be unavailing. A case quite closely in point is *W. A. Sturgeon & Co.* v. *Board of Assessors,* 159 Mich. 199.

Counsel for plaintiffs cite a number of cases in which, in like circumstances, the writ has issued, among them: *Union Trust Co.* v. *Detroit Common Council,* 170 Mich. 692; *Detroit Trust Co.* v. *Detroit Common Council,* 170 Mich. 701; *Stroh* v. *City of Detroit,* 131 Mich. 109; *Standard L. & A. Ins. Co.* v. *Board of Assessors,* 95 Mich. 466; *Latham* v. *Board of Assessors,* 91 Mich. 509. The trial judge also cited and relied on some of them in an opinion filed. That there is a considerable number of such cases lends substance to the view that they establish the rule of law accepted by the trial court. But in those cases the question of remedy was not raised. It is raised, briefed, and relied on in the case at bar. And the cases cannot have the effect of making mandamus here availing when it is in fact and law unavailing.

If the question were merely technical, we would be disposed to base decision on the other serious and meritorious questions presented, but consideration which, of necessity, shows the judgment to be without advantage is not technical.

The matter of adequate legal remedy is discussed in *W. A. Sturgeon & Co.* v. *Board of Assessors, supra.*

A majority of the court think a brief advisory opinion on the merits may aid in determining rights and save further litigation.

Respecting double taxation, the rule relied on by defendants is perhaps the rule of most jurisdictions and is stated in 37 Cyc. p. 821:

"Since the capital of a corporation, which is its property, is a distinct and separate thing from the interests of the stockholders, represented by the shares they severally hold, and since the principle which forbids duplicate taxation is not violated, at least according to the decisions in many States, by assessing the capital to the corporation and the shares to their holders, it follows that shares of stock in a domestic or foreign corporation may properly be assessed for taxation to their holder at the place of his domicile, irrespective of the taxes which may be imposed on the corporation itself in respect to its capital or franchises."

This is not the rule in Michigan.

It was said in *Stroh* v. *City of Detroit, supra*:

"The taxation of shares to the shareholder, and property to the corporation, is clearly double taxation, within the spirit of the constitutional provision, and while we appreciate the fact that the shareholders and the corporation are different entities in the law, and that shares of stock are recognized as property, and distinct from the corporate property, it is plain that the shareholders are the corporation, and that they are the owners of its property. The Constitution does not permit the taxation of both property and shares, and we must, if possible, give such a construction to the law as to make it reconcilable with the Constitution."

See, also, *Thrall* v. *Guiney,* 141 Mich. 392 (113 Am. St. Rep. 528) ; *Detroit Citizens Street R. Co.* v. *Com-*

*mon Council,* 125 Mich. 673, 694 (84 Am. St. Rep. 589).

The plaintiff stockholder was entitled, in fixing assessed value of his shares, to proper deduction in respect of credits secured by lien upon real property upon which specific tax had been paid under Act No. 91, Pub. Acts 1911 (1 Comp. Laws 1915, § 4268 *et seq.,* 1 Comp. Laws 1929, § 3640 *et seq.*). *Union Trust Co.* v. *Detroit Common Council, supra.*

The State Constitution (section 3, art. 10) requires that there be a uniform rule of taxation, and this forbids double taxation. *Stroh* v. *City of Detroit, supra.*

The assessment of the shares of capital stock in the bank was made pursuant to Act No. 322, Pub. Acts 1929 (1 Comp. Laws 1929, § 3396), which provides for the taxation of—

"All shares in banks and trust companies organized under the laws of this State or by authority of the United States at their cash value, after deducting the assessed value of all real property owned or leased by any such banks and trust companies, * * * also deducting that proportion of the par value of all securities issued by the United States government, or by any Federal land bank or joint stock land bank, or by any State, or any county, township, city, village, school district, or any political subdivision thereof owned by any such banks and trust companies that the capital, surplus, and undivided profits bear to the capital, surplus and undivided profits and deposits. The cash value of each share shall be determined by adding together the capital stock, surplus and undivided profits, deducting therefrom the items aforesaid, and dividing the result by the number of shares into which the capital stock is divided."

12 USCA § 548, provides:

"The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. * * *

"In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks."

The record shows much moneyed capital in competition with the business of plaintiff national bank, and which capital in being assessed may have exemption under the law of the State of credits secured by lien upon real property upon which specific tax has been paid under Act No. 91, Pub. Acts 1911 (1 Comp. Laws 1915, § 4268 *et seq.*, 1 Comp. Laws 1929, § 3640 *et seq.*), an exemption which said Act No. 322 denies to the shares in plaintiff bank.

So it appears that the Act No. 322 discriminates against shares in plaintiff national bank in violation of the Federal statute cited; also, that it seeks, as above stated, to impose a double tax, contrary to State Constitution. Act No. 322 is in this respect invalid.

Judgment reversed.

BUTZEL, C. J., and WIEST, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred. POTTER, J., did not sit.