DUTCH COOKIE MACHINE CO. v. VANDE VREDE.

1. INJUNCTION—TRADE SECRETS—JIG FOR MAKING COOKIE ROLLS—EVIDENCE.

In suit by manufacturer of machinery and cookie rolls used by bakers to enjoin defendant, a former employee who had signed an agreement not to divulge or publish trade secrets, trial court's refusal to enjoin the use of a jig allegedly of a peculiar type especially suited to plaintiff's business *held*, not reversible under record containing testimony of two experienced machinists that there was nothing secret, extraordinary, or unusual in the character of the jig.

2. SAME—TRADE SECRETS—COOKIE DIE ROLLS.

In former employer's suit against employee to enjoin divulgence and publication of trade secrets, claims that a cookie die roll assembly, certain engraving of edges of dies in the roll, and special electric welding were trade secrets *held*, without merit under record presented.

3. Master and Servant—Trade Secrets—Nondisclosure.

Where one obtains a trade secret of another either under contract not to divulge the same or because of a relation of confidence or through his employment, he will not be permitted afterwards to make use of such secret for his own benefit or to disclose it to others without the consent of the original possessor of the secret.

4. Injunction—Trade Secrets—Violation of Express Agreement.

In suit by manufacturer of machinery and cookie rolls used by bakers against former employee to enjoin violation of express agreement relative to trade secrets, plaintiff *held,* not entitled to broader or greater injunctive relief than that allowed by trial court.

5. Same—Plaintiff's Burden of Proof—Injury Must be Actual or Threatened and Not Mere Apprehension.

In suit for an injunction plaintiff has the burden of establishing a right to injunctive relief and must prove by a preponderance of the evidence actual or threatened invasion of his rights as alleged, proof of mere apprehension of injury being insufficient to justify granting such relief.

6. Same—No Material Injury to Defendant.

Injunctive relief will not be granted merely on the theory that no material injury will result to the party enjoined.

7. Master and Servant—Competition with Former Employer—Divulgence of Trade Secrets.

A former employee of manufacturer of machinery and cookie rolls used by bakers has a right to enter into business in competition with former employer provided he did not violate or threaten to violate the provisions of his contract with plaintiff relative to divulgence of trade secrets.

8. Appeal and Error—Record—Supreme Court.

The Supreme Court is bound by the record as made.

9. Injunction—Bronze Cookie Rolls—Molding Sand—Smoking of Molds—Independent Manufacture.

In suit by manufacturer of machinery and cookie rolls used by bakers to enjoin former employee from violating express agreement relative to trade secrets, plaintiff was not entitled to injunction against defendant in the use of plaintiff's formula for the component parts of the bronze of which the rolls were made or the formula for mixing sand for molding or method of smoking the molds in which the parts of the roll are cast where

defendant's partnership did not plan to operate a foundry or to direct how the molding should be done but planned to have others already engaged in the business do it entirely independently of any trade secret or secret processes which plaintiff had developed in its business.

10. SAME—USE OF CUSTOMERS LIST—EFFECTIVE RESULTS.

Former employee's use of customers list of plaintiff manufacturer of machinery and cookie rolls used by bakers would not be enjoined where such list is readily accessible to anyone interested by merely using trade journals, an injunction in such instance not producing any effective result.

11. EQUITY—BENEFICIAL RESULTS.

Equity will not do that which will be of no benefit to the party asking it.

12. MASTER AND SERVANT—TRADE SECRETS—PATENTS—INJUNCTIONS —MULTIPLICITY OF SUITS.

Since the claimed wrongful use of trade secrets or secret processes which plaintiff manufacturer of machinery and cookie rolls sought to enjoin its former employee from making is incompatible with a claim of rights asserted under a patent, injunction will not be granted to avoid a multiplicity of suits at law for damages incident to infringement of plaintiff's patent.

13. PATENTS—DISCLOSURE BY INVENTOR.

Under the patent law an inventor is required to set forth the manner and process of making, constructing and using his article in such full, clear, concise and exact terms as to enable any person skilled in the art or science to which it pertains to make, construct, and use the same (35 USCA, § 33).

14. SAME—INJUNCTION—MASTER AND SERVANT—COOKIE ROLLS.

In suit to enjoin violation of express agreement relative to trade secrets, plaintiff manufacturer of machinery and cookie rolls used by bakers *held,* not to have established any claim of invasion by defendant, its former employee, of any patent right held by plaintiff.

Appeal from Kent; Brown (William B.), J. Submitted January 12, 1939. (Docket No. 47, Calendar No. 40,339.) Decided June 22, 1939.

Bill by Dutch Cookie Machine Company, an alleged copartnership, against Isaac Vande Vrede to enjoin the use of certain alleged secret manufacturing processes and for other relief.   From decree rendered, plaintiff appeals and defendant cross-appeals. Reversed.

*Warner, Norcross & Judd,* for plaintiff.

*Russell Van Kovering,* for defendant.

North, J.   This is a suit for injunctive relief.   In the circuit court the relief sought was granted in part and denied in part.   Both plaintiff and defendant have appealed.

The bill of complaint alleged that the defendant while an employee of plaintiff, an alleged copartnership, had obtained knowledge of certain trade secrets and that he is about to engage in a competitive business using those trade secrets in violation of an express agreement existing between plaintiff and defendant.   This agreement was entered into September 27, 1933, two years after defendant began working for plaintiff.   In part it reads:

"All discoveries and inventions referred to in the preceding paragraphs, together with all knowledge and information which the employee shall acquire during said employment respecting the business of the employer, shall be held by the employee in trust and in fiduciary capacity for the sole benefit of the employer, its successors, and assigns, and the employee agrees not to divulge or publish, or authorize anyone else to divulge or publish, either during his term of employment or subsequent thereto, knowledge of said discoveries or inventions, or any technical or other information acquired in the course of his employment under this agreement, or any confidential information concerning the employer's business that may be thus acquired."

Plaintiff's business is that of developing and manufacturing machinery and cookie rolls to be used by bakers in making cookies and like products. Defendant continued in plaintiff's employ after signing the agreement until October 2, 1937, when he quit. For several days prior to leaving, defendant was engaged in completing arrangements for a business which would compete with plaintiff in the manufacture of bronze cookie rolls to be used on cookie-making machines, including the machine made by plaintiff as well as others. Plaintiff claims that under the agreement of September 27, 1933, defendant is precluded from engaging in the business of making cookie rolls in competition with plaintiff, because the information now possessed by defendant regarding the making of cookie rolls was all obtained while he was employed by plaintiff and the agreement prevents defendant from using this information in a competitive business. The details of plaintiff's claim as to secret processes used in its business are outlined in the trial judge's opinion as follows:

"Plaintiff claims that the method of mixing the bronze metal for casting the cookie rolls, the method of assembling and manufacturing the roll from segments rather than from continuous tube, the method of mixing the sand in the foundry for the casting of the parts for the rolls, the method of using smoke upon the sand molds and cores for the purpose of obtaining smooth surfaces to the castings, the method of assembling the segments and pieces which finally constitute the finished roll, the aligning of such pieces and the soldering of such pieces of bronze together and the tightening of bolts by means of nuts which extended lengthwise through the center of the manufactured roll,—are all unusual and secret processes unknown to the trade and unknown to manufacturing concerns other than that of plaintiff."

As against plaintiff's claims, defendant denies he has violated the contract and asserts that the relief sought by plaintiff should not be granted for the reason that the processes which enter into the making of cookie rolls are matters of common knowledge to the trade and are not in the nature of trade secrets. Further, that the statute (3 Comp. Laws 1929, §§ 16667, 16672 [Stat. Ann. §§ 28.61, 28.66]) of this State prevents entering into a contract which will deprive defendant of the right to engage in any business in which he may be skilled.

After having heard the testimony of the respective parties, the circuit judge found that only three of the processes used by the plaintiff in the manufacture of its rolls were trade secrets, viz., the secret formula of the component parts of the bronze used; the secret formula for mixing the sand used in the molds in casting the bronze parts; and the method of smoking the molds as developed by plaintiff. Injunctive relief was decreed restraining the defendant from using any of these trade secrets or processes. It is from this restricted injunctive relief that plaintiff has appealed, claiming that it should have been granted broader injunctive relief in the particulars about to be noted.

Plaintiff claims that in its business a jig of a peculiar type especially suited to plaintiff's business has been developed and has been kept as a trade secret. This is a device used to hold in place material being worked upon and being so held that it may be machined accurately. It would serve no beneficial purpose to detail the testimony pro and con upon the issue presented by defendant's claim that there was nothing novel or secret about this particular jig. Defendant produced as witnesses two machinists of years of experience and the purport of their testimony is that there is nothing secret, extraordinary

or unusual in the character of the jig which plaintiff claims it has developed in the course of its business but instead it only serves a purpose of a character commonly known to manufacturers and their machinists. We find nothing in this record that would justify reversal of the circuit judge's determination in consequence of which plaintiff was denied injunctive relief in this particular.

As disclosing the character of other claims made by plaintiff, we quote the following from its brief:

"Appellant manufactures a cookie die roll, consisting of a great many identical cast segments, which are assembled into a cylinder by means of steel rings tied together by long bolts with nuts on the ends thereof. The entire roll is trued up into a perfect cylinder by the tightening of the nuts, which operation (to secure a true cylinder) is extremely difficult, if not impossible, without specific information as to which nuts to tighten and the application of a hammer to various parts of the roll to bring about a springing into true rather than out of true.

"In order to bring about the release of the cookie dough from the individual dies in the roll, appellant has caused the edges of the dies to be engraved at a slant, which slant varies, depending upon the texture of the dough for which the roll is designed.

"After the cookie die roll manufactured by appellant is assembled, the individual cast segments are joined together by electric welding. Appellant has learned at what degree of heat and at what distance from the metal the welding must be done to bring about the best results."

The circuit judge found that the method used by plaintiff in tightening bolts incident to an attempt to true into a perfect cylinder the cookie roll being constructed was not a trade secret. The conclusion seems almost self-evident, but aside from that this finding was sufficiently sustained by the testimony of

an engineer of years of experience who as a witness said in substance that there was nothing unusual in loosening and tightening bolts to obtain a complete or perfect circle. The circuit judge of necessity further held that there was nothing in the nature of a trade secret in that the rolls made by plaintiff were manufactured with slanting sides to the dies. These rolls are manufactured for and sold to various bakers, and the most casual observation or investigation would disclose this characteristic. There is testimony that others manufacture dies with slanting sides. We find no merit in plaintiff's contention that a trade secret rested in the fact that the dies constructed with slanting sides would more readily release the dough from the rolls when in use. The most limited experiment by one interested in this type of construction would quickly reveal the difference in operation in this particular between a roll composed of dies having slanting sides and one not so constructed. And like the circuit judge, we are of the opinion that under the testimony in this record plaintiff has not established his claim that he has any secret practice concerning electric welding which would not be readily ascertained through slight experiments by anyone skilled in that occupation. A witness who had observed electric welding in plaintiff's place of business and also in other manufacturing plants testified that plaintiff makes no use of electric welding differing materially from that of other manufacturers. Further, the record does not disclose that defendant has ever acquired any personal knowledge of the particular manner in which electric welding is accomplished in plaintiff's plant.

We are in full accord with plaintiff's contention that where one obtains a trade secret of another either under contract not to divulge the same or because of a relation of confidence or through his em-

ployment, he will not be permitted afterwards to make use of such secret for his own benefit or to disclose it to others without the consent of the original possessor of the secret. *O. & W. Thum Co.* v. *Tloczynski,* 114 Mich. 149 (38 L. R. A. 200, 68 Am. St. Rep. 469) ; *Sanitas Nut Food Co.* v. *Cemer,* 134 Mich. 370; *Glucol Manufacturing Co.* v. *Schulist,* 239 Mich. 70. But our study of this record satisfies us, in view of the facts noted, there is no merit in plaintiff's claim that because of alleged trade secrets or secret processes used in his business he is entitled to a greater or broader measure of injunctive relief than was decreed in the circuit court.

Defendant by cross-appeal asks reversal of the circuit judge's decree wherein it is provided that the defendant be restrained (1) from using or disclosing the formula for the component parts of the bronze used by plaintiff, (2) from using or disclosing the formula for mixing sand for the molds used in making the bronze castings, (3) from using or disclosing the special method of smoking the molds in the manner developed by plaintiff, and (4) from using or disclosing any list of customers which defendant may have obtained from plaintiff's files or records.

Plaintiff has the burden of establishing a right to injunctive relief. He must prove by a preponderance of the evidence actual or threatened invasion of his rights as alleged. Proof of mere apprehension of injury is insufficient to justify granting injunctive relief. *Bates* v. *City of Hastings,* 145 Mich. 574. The cited case is also authority for the proposition that injunctive relief will not be granted merely on the theory that no material injury will result to the party enjoined.

Admittedly defendant formed a partnership which definitely planned to enter into the business of manufacturing cookie rolls, et cetera, in competition with

plaintiff. But this, as plaintiff admits in its brief, defendant had a right to do, provided he did not violate or threaten to violate the provisions of his contract with plaintiff. We are bound by the record as made. There is no testimony tending to show that defendant either violated or threatened to violate his contract by using plaintiff's formula for the component parts of the bronze of which the rolls were made or plaintiff's formula for mixing sand for molding or plaintiff's method of smoking the molds in which the parts of the roll are cast. Instead the undisputed testimony is that defendant and his partner do not plan to operate a foundry or to direct how the molding incident to their business shall be done; but in so far as they have occasion to have molding done it will be done by the others already engaged in the molding business. We quote in part defendant's testimony on this phase of the case.

"I was not contemplating the making or casting of duplicate patterns myself in the opening of my shop or business. I did make provision to have the casting of these duplicate patterns done at the Dempis-Duus (molders who had previously done like work for plaintiff). I had not given them any instructions, nor did I have any known formula for the substance that was to be used in the making of the duplicate patterns. That was up to the foundry man. From my experience as a foundry man working in a foundry, I do not know whether or not a foundry man can combine various elements so as to make a bronze, partial bronze casting of a particular hardness or softness; that is a matter that I am going to leave with the foundry man himself."

Certainly defendant would not be violating the terms of his contract if, as the undisputed testimony discloses the contemplated plan to be, he has the molding of the bronze parts used in his business done

by another and entirely independent of any trade secret or secret processes which plaintiff had developed in its business. Plaintiff was not entitled to injunctive relief on this phase of the case.

The remaining question is whether the court should grant plaintiff injunctive relief in consequence of its claim that defendant has used its customers list and this in violation of the contract of September 27, 1933. Defendant denies having used or threatened to use plaintiff's list of customers. The testimony is not at all satisfactory on this question; but it appears that it is of little or no practical importance whether defendant has attempted to use plaintiff's customers list or his knowledge of the individuals or firms listed thereon as a means of soliciting future business. There is no testimony that defendant has or had actual possession of plaintiff's customers list; although he does have knowledge of the customers with whom plaintiff has done business. But the situation is peculiar in that there is in the United States only a limited number of bakers who manufacture on a sufficient scale to make them prospective purchasers of the cookie rolls manufactured by plaintiff. Plaintiff's testimony is that 90 per cent of such manufacturers are already on his customers list. But it convincingly appears from the testimony that a list of such manufacturers is readily accessible to anyone interested by merely using trade journals. There would be no particular advantage to defendant or disadvantage to plaintiff even if the former did use his knowledge of plaintiff's customers list because a complete list of such prospective customers is easily accessible to any one interested. Granting plaintiff the injunctive relief sought in this particular would be little short of an idle ceremony. As between these litigants it would produce no effective result.

"And inasmuch as vain acts are in the same category as erroneous actions, courts will in such case refuse to grant (injunctive) process. * * * Equity will not do that which will be of no benefit to the party asking it." Lewis and Spelling, Law of Injunctions (1st Ed.), p. 107, citing numerous cases including *Detroit United Railway* v. *City of Detroit*, 214 Mich. 170.

The rule in injunction proceedings is not unlike that in mandamus, and we have repeatedly held that in a mandamus proceeding the writ will not issue when it is obvious that it would be unavailing. *Gedratis* v. *Judge of Superior Court of Grand Rapids*, 236 Mich. 383; *First National Bank of Wyandotte* v. *Common Council of City of Detroit*, 253 Mich. 89.

By an amendment to its bill of complaint, plaintiff also seeks injunctive relief on the theory that defendant's proposed manufacture for use and the use of defendant's cookie die roll in plaintiff's patented "Dutch Cookie Machine" would lead to a multiplicity of suits at law for damages in consequence of infringement of plaintiff's patent. But plaintiff's suit is fundamentally based on claimed wrongful use of its trade secrets or secret processes. Such claims are incompatible with a claim of rights asserted under a patent. This is true because under the patent law an inventor is required to set forth "the manner and process of making, constructing * * * and using it in such full, clear, concise and exact terms as to enable any person skilled in the art or science to which it pertains to make, construct, * * * and use the same." 38 Stat. at L. 958, U. S. Revised Stat. § 4888, as amended; 35 USCA, § 33. See, also, *Dow Chemical Co.* v. *American Bromine Co.*, 210 Mich. 262. Further than this, plaintiff has failed to establish any claim of invasion by defendant of any

patent right held by plaintiff; therefore, there is no occasion, even if otherwise appropriate, to grant injunctive relief for the purpose of avoiding a multiplicity of suits.

Under the facts of this case it is not essential to decision to give consideration to defendant's claim that by reason of the statutes hereinbefore cited the contract upon which plaintiff relies is rendered invalid in whole or in part. For the reasons indicated we are of the opinion that the circuit judge under this record was in error in decreeing injunctive relief in behalf of plaintiff. A decree may be entered in this court in accordance herewith. Defendant will have costs of both courts.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.