## BARNEY v. BARNEY.

1. JUDGMENT—COURTS—JURISDICTION—COLLATERAL ATTACK — NULLITY.

   In a suit by a father to set aside a deed of a farm to his son by the grandfather, the determination of the court that the father was the sole heir at law of the grandfather, who was supposed to have died intestate, and as such entitled to the land in question, was a nullity as an invasion of the jurisdiction of the probate court, and was open to attack in a subsequent suit between the parties wherein the son sought to establish his right to said land as devisee under his grandfather's will, which had in the meantime been probated and allowed.

2. WILLS—DELAY IN PROBATING—LACHES.

   The mere lapse alone of nine years in the offering for probate of a will is not such laches as will defeat a claim thereunder after the allowance of the will in the probate court.

3. SAME—LACHES—ESTOPPEL.

   Where plaintiff father knew of the existence of a will executed by the grandfather in favor of defendant son soon after the death of testator, he could not complain of the delay of the son in offering the will for probate, especially in view of the relationship existing between the parties and the fact that they lived in the same home.

4. ADVERSE POSSESSION—POSSESSION UNDER LEASE NOT ADVERSE.

   Where plaintiff went into possession of a farm under a lease from his mother, his possession could not ripen into a title by adverse possession as against the rights of his son therein under his father's will, the probating of which was delayed for nine years.

5. ESTOPPEL—COURTS—EQUITY—ADEQUATE REMEDY AT LAW.

   Where defendant's action in ejectment was enjoined by the plaintiff, he cannot now be heard to say that defendant's remedy is at law rather than in a court of equity.

Appeal from Calhoun; North (Walter H.), J. Sub-

On effect of delay in probating wills, see note in 57 L. R. A. 253.

On right to probate will after distribution of property as intestate, see note in 36 L. R. A. (N. S.) 89.

mitted June 10, 1921.     (Docket No. 38.)     Decided
November 3, 1921.

Bill by Fred W. Barney and others against Oliver
W. Barney to enjoin an action of ejectment and to
quiet title to land.     Defendant filed a cross-bill to
quiet title and for an accounting.     From a decree for
defendant, plaintiff Barney appeals.     Affirmed.

*James M. Powers* and *Powers & Winkler,* for ap-
pellant.

*Henry F. Jacobs* and *Leland H. Sabin,* for defend-
ant.

CLARK, J.     Earlier efforts to get for the defendant
lands left him by the will of his grandfather are *In
re Barney's Will,* 187 Mich. 145, and *Howes* v. *Barney,*
199 Mich. 569.

On August 11, 1898, Oliver Barney and Phoebe J.
Barney, his wife, executed a deed of the lands in
question here to their grandson, Oliver W. Barney, the
defendant.     The deed reserved to the grantors the
use and control of the lands during their lives, and
it was left with the attorney who drew it.     Oliver
Barney died February 12, 1900.     The deed was re-
corded February 23, 1900.     Fred W. Barney, son of
Oliver and father of the defendant, claiming to have
had no knowledge of the deed and alleging that his
father died intestate seized of the said lands, applied
to the probate court of Calhoun county for the ap-
pointment of an administrator of the estate.     The
appointment was made July 20, 1900.     The only
claim presented was that of Fred W. Barney, which
was allowed September 24, 1901, in the sum of
$450.45.     Fred W. Barney filed a bill against his
mother to set aside the life estate in said lands as

reserved in the said deed, to set aside that deed, and to set aside a deed of other land, made on August 11, 1898, by his father to her. This suit was settled March 27, 1901, and plaintiff secured from his mother a lease of the lands in question for the term of her life. She died in 1915. In December, 1901, plaintiff Fred W. Barney brought suit in the Calhoun circuit against defendant, his son, then 18 years of age, to set aside the said deed, alleging that when the deed was made his father was mentally incompetent and unduly influenced by his mother, that there had been no delivery, and that the deed was a fraud upon his rights as a creditor and as the sole heir at law. The return of the subpœna states that Fred W. Barney served it personally upon the defendant, his son, whom he later took to the office of his attorney where the son signed a petition for the appointment of the clerk of the court as guardian *ad litem*. Defendant testified that he had no knowledge of the service of the subpœna, and as to his understanding of the signing of the said petition said:

"My father asked me to go up there and sign a paper that would fix matters in regard to grandfather's property so that my grandmother could not leave it to her family, the Hendershot family, at her death."

He also testified that he knew nothing of the making and recording of said deed until 1913. On June 5, 1902, decree was entered, finding the allegations of the bill to be true, setting aside the deed and determining that the said lands were the property of Fred W. Barney as the sole heir at law. The decree was recorded in the office of the register of deeds for the county on December 20, 1902. Upon receiving the lease from his mother, Fred W. Barney went into possession of the lands and has since continued in possession. Oliver W. resided with his father until

March, 1913, working for him, attending school, and from 1910 to 1913 was interested with him in business. About the time defendant became 21 years of age, October, 1904, he found in his room at home a will of his grandfather. He retained the will in his possession until July 28, 1913, when it was offered for probate. He said nothing of its existence during that period unless he talked with his mother about it, as he now claims. The will was allowed. It is set forth at length in *Re Barney's Will*, 187 Mich. at page 147, opinion filed July 23, 1915. It gave the lands in question to defendant, subject to a life estate in the widow and the payment of certain small legacies and charges. In September, 1915, an administrator with the will annexed was appointed. He began proceedings for possession before a circuit court commissioner. A question of title was raised, and the proceedings were dismissed. He then brought ejectment in the circuit court and again failed. See *Howes v. Barney, supra.* Then Oliver W. Barney, defendant here, January 10, 1919, began a suit in ejectment against Fred W. Barney for the lands, claiming title under the will. Then plaintiff Fred W. Barney, with other plaintiffs, who claimed to be his tenants, filed this bill, with a prayer that the ejectment proceedings be enjoined, that the record of the will be set aside as a cloud upon the title, and that title be quieted in the plaintiff, Fred W. Barney. The ejectment proceedings were enjoined. Defendant answered and by cross-bill prayed that he be decreed to be the absolute owner of the lands under and by virtue of the will and according to its terms, that an accounting as to rents and profits of the lands be had, that the decree of June 5, 1902, setting aside the deed to defendant be held to be of no force and effect in so far as it decrees said lands to be the property of Fred W. Barney as the heir at law of Oliver Barney.

There was a prayer also for general relief. The decree in this cause provides: That plaintiff's claim against the estate be set off against defendant's claim for use and occupancy of the lands, for timber cut and removed, and for unpaid taxes, that the decree of June 5, 1902, made by said court be set aside and vacated as a cloud upon the title, that defendant is the owner of the land in fee, subject to payment of the legacies, and that defendant have a writ of possession for the lands. Fred W. Barney, the real party of interest as plaintiff, has appealed.

As we are able to gather from the briefs, the questions raised by appellant are:

1. That the cross-bill is a collateral attack upon the decree of June 5, 1902. The cross-bill does not attack that portion of the decree in which the deed was set aside, that portion which the chancery court had jurisdiction to make, but it attacks that portion of the decree wherein the chancery court sought to determine that Oliver Barney had died intestate and that Fred W. Barney was the sole heir at law and as such the absolute owner of the lands in question. The bill of complaint in that cause shows that the probate court of the county had issued letters of administration of the estate and had jurisdiction of the same. The determination sought to invade the jurisdiction of the probate court and was a nullity and open to the attack here made by the defendant. See *Tipson* v. *Jeannot*, 204 Mich. 403; *Brooks* v. *Hargrave*, 179 Mich. 136; *People* v. *Wayne Circuit Judge*, 11 Mich. 393 (83 Am. Dec. 754); *Greenvault* v. *Farmers, etc., Bank*, 2 Doug. 498; *Winegar* v. *Newland*, 44 Mich. 367; *Kellogg* v. *Aldrich*, 39 Mich. 576; *In re Andrews' Estate*, 92 Mich. 449 (17 L. R. A. 296); *Tromble* v. *Hoffman*, 130 Mich. 676; *Adams* v. *Hubbard*, 30 Mich. 104; 23 Cyc. p. 1073.

2. That defendant should be held to be estopped

from taking anything under the will because of laches. Defendant first learned of the will about 1904. He neither offered it for probate nor claimed anything because of it until 1913, a period of 9 years. No laches can be charged against him before he learned of the will, and the history of the litigation fairly discloses that none may be claimed since the will was offered for probate. The mere lapse alone of 9 years will not suffice to defeat defendant's claim. It is said in *Walker* v. *Schultz,* 175 Mich. at page 293:

"But mere lapse of time does not necessarily constitute laches. As a rule it involves other considerations. It means that negligence or omission to assert a right which, considering the lapse of time in connection with other facts and circumstances prejudicial to the interests of the adverse party, render it unjust and inequitable to recognize such right when finally asserted. * * * Where the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot as a rule be recognized. *Parker* v. *Hotel Co.,* 96 Tenn. 252 (34 S. W. 209, 31 L. R. A. 706)."

Plaintiff claims prejudice by the delay in the loss of witnesses against the will. An examination of the record does not disclose merit in this contention, and there is creditable testimony of witnesses that plaintiff knew of this will soon after the death of the testator and that he said:

"He said the will was made to Oliver but he was not going to let him know anything about it until he got older. That boys were apt if they thought they had property not to take any interest in anything else, if they had plenty to do with without work and he thought Oliver would do better if he did not let him know anything about the will."

Knowledge of the existence of the will does not square with the claim of prejudice. The trial judge found that no considerable improvements upon the

lands had been made by plaintiff, that he had removed timber and had enjoyed the use of the lands.   The taxes for 1915 and subsequent years, amounting to $823.41, were not paid.   An explanation by defendant of the delay was that upon reading the will it appeared that he would have nothing while his grandmother lived.   And the fact that the parties were father and son living at home together, is to be considered.   It is said in *Wright* v. *Wright,* 37 Mich. 55 (Chief Justice COOLEY) :

"The relationship of the parties is entitled to great weight when the question is one of laches in taking hostile steps, and the same prompt and energetic proceedings which would be expected in other cases ought not to be demanded of near relatives, not only because they may naturally and commendably be reluctant to engage in litigation, but also because they ought to be able to rely more on substantial justice being voluntarily done them by a member of the family than by a stranger."

Defendant's right to the relief prayed is not barred by laches.

3. It follows from the foregoing that plaintiff's claim of title by adverse possession is without merit. Nor are we inclined to disturb the provision of the decree wherein plaintiff's claim against the estate was set off against the claim for use and occupation.

4. It is said that defendant may not upon his cross-bill have his title under the will quieted, he not being in possession, citing 3 Comp. Laws 1915, § 12302. Of this the trial court correctly said:

"I am of the opinion that this position is not well taken because since the plaintiff enjoined the defendant from instituting a proceeding at law whereby he sought to dispossess the plaintiff from the premises; he cannot now be heard to say that the proceeding cannot be heard in this court in equity.   The plaintiff has compelled the defendant to come into this

court and therefore all matters pertaining to the subject-matter of the suit should be adjusted in this one proceeding."

The decree is equitable, and it is affirmed, with costs to defendant.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.