UNITED ARMENIAN BRETHREN EVANGELICAL CHURCH
v. KAZANJIAN.

1. RELIGIOUS SOCIETIES — ECCLESIASTICAL AFFILIATION — SETTING ASIDE DEED.

   In suit to set aside deed of church property from some of church trustees to another church organization, the ecclesiastical affiliation of the grantor and grantee groups to a national church organization is determined as of the date the transfer was made irrespective of subsequent repudiation of grantee group of such relationship.

2. SAME—PROPERTY RIGHTS—COURTS.

   The judicial determination of property rights as between two church groups claiming church property does not constitute an unlawful interference with ecclesiastical affairs of a church.

3. SAME — CONVEYANCE OF CHURCH PROPERTY — CONSIDERATION — FRAUD.

   In suit to set aside a deed, to quiet title in plaintiff of certain church property, and to enjoin defendants from interfering

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 45 Am. Jur., Religious Societies, § 59.
[2] Determination by the civil courts of property rights between contending factions of an independent or congregational church. 8 A.L.R. 105; 70 A.L.R. 75.
[4] 45 Am. Jur., Religious Societies, § 5.
[5] 13 Am. Jur., Corporations, § 7.
[5] Disregarding corporate existence. 1 A.L.R. 610; 34 A.L.R. 597.
[6] 45 Am. Jur., Religious Societies, § 70.
[7] 45 Am. Jur., Religious Societies, § 69.

with the members of plaintiff church in their worship in the church, record *held*, to establish that plaintiff corporation is the equitable successor in interest to unincorporated voluntary association formed some nine years before the church property was acquired by the original trustees and paid for by voluntary contributions of the members thereof and branch churches of central group in other States, that such local association was affiliated with and subject to the jurisdiction of the central committee, that individual defendant was recognized as a member of the plaintiff group until she repudiated her relationship therewith, that she had had the property secretly deeded to defendant church as whose pastor she assumed to act in violation of central committee's bylaws, that her family controlled the finances of defendant church, that such transfer was without authority of, or consideration to, plaintiff church, and a fraud upon it.

4. SAME—INCORPORATION—HOLDING OF PROPERTY.

Fact that plaintiff was merely a voluntary unincorporated association for several years after acquisition of church property and incorporation of defendant church organization would not preclude plaintiff from retaking title to the property.

5. EQUITY—CORPORATE ENTITY.

Equity will look through and behind the legal entity of corporate existence whenever necessary to prevent injustice or to right a wrong.

6. RELIGIOUS SOCIETIES — MEMBERSHIP — WITHDRAWAL — PROPERTY RIGHTS.

While membership in a church organization may be withdrawn with or without reason, such right of withdrawal does not carry with it the right to take the church property away from the regular church organization nor prevent its use for purposes of worship by those who chose to remain in the church.

7. SAME—ECCLESIASTICAL REMEDIES—LACHES.

Church organization which first became aware of fact that its trustees had conveyed some six years after deed had been executed and first exhausted ecclesiastical remedies before resorting to court action was not guilty of laches by reason of mere lapse of time.

Appeal from Wayne; Richter (Theodore J.), J. Submitted October 6, 1948. (Docket No. 30, Calendar No. 44,159.) Decided November 12, 1948.

Bill by United Armenian Brethren Evangelical Church, a Michigan ecclesiastical corporation, against Anna Kazanjian and others to set aside a deed to real estate and to quiet title to real estate in the plaintiff. Decree for defendants. Plaintiff appeals. Reversed.

*J. Gilbert Quail,* for plaintiff.

*Bevan, Walter & Zwerdling,* for defendants.

Boyles, J. This is an action to set aside a deed, to quiet title in plaintiff of certain church property, and to enjoin the defendants from interfering with the members of the plaintiff church in their worship in said church. The question for determination is which of two groups of Armenian church members owns the church property. The trial court entered a decree holding that the defendant church owned the property and dismissed the bill of complaint. The plaintiff appeals.

Plaintiff is an ecclesiastical corporation organized under the laws of Michigan on January 17, 1946. Defendant Armenian Full Gospel Church is an ecclesiastical corporation organized under the laws of Michigan on October 18, 1939. The facts in certain respects are in dispute, but it appears that a voluntary religious association was organized in Detroit in 1929 calling itself the Detroit Armenian Brethren Church. In 1938 that organization purchased the church property which is the subject of this suit. It was paid for by contributions from individual members of appellant church, and branch churches of the United Armenian Brethren Churches in other States. The deed named the grantees therein as follows: "Anna Kazanjian, Louise Ajemian, Abraham Kennigian, Dr. Edward Shamlian, and Hovsep Avesian, as trustees for United Armenian Brethren

Evangelical Church." This deed was recorded November 22, 1938.

On October 18, 1939, articles of incorporation of the defendant Armenian Full Gospel Church were filed with the Michigan corporation and securities commission. This was done nearly a year after the aforesaid title to the church property was acquired in the name of the above-mentioned five persons, "as trustees for United Armenian Brethren Evangelical Church." In the articles of incorporation of said defendant Armenian Full Gospel Church, the following were named as the incorporators: "Rev. Anna Kazanjian, pastor; Joseph Kurkjian, clerk, Sec'y. & Treas.; Edward Shamlian, deacon; Louise Ajamian, chairman Bd. of Trustees; Joseph Kurkjian, trustee; Mrs. Virginia Kurkjian, missionary; Joseph Avesian, deacon." It appears that three of the six incorporators were the defendant Anna Kazanjian, her daughter Virginia Kurkjian, and her son-in-law Joseph Kurkjian who signed the articles twice, as "clerk, Sec'y. & Treas." and as "trustee."

On December 28, 1939, a warranty deed was executed by the individual defendant Anna Kazanjian, as trustee, and three of the other trustees named in the aforesaid deed, conveying said premises to defendant Armenian Full Gospel Church. The fourth trustee named in the original deed, one Abraham Kennigian, did not join in said deed to defendant church. Also, one of said trustees whose name appears as grantor did not actually sign the deed. His name was signed by another trustee (who did sign) who claims that he had verbal authority to sign the name of the fourth trustee Hovsep Avesian.

Until about 1945 the affairs of the organization ran along fairly smoothly, although dissensions had arisen over the administration of church funds and the lack of an ordained minister. The individual defendant Anna Kazanjian was only a "Bible Woman,"

and the bylaws of the Central Committee did not allow a "sister" to be the pastor of a church. The members complained because it was necessary to call in an ordained minister of the church for baptisms, communions, and funerals. However, Anna Kazanjian continued to act in the capacity of pastor for the church until sometime in 1945, at which time the dissension reached an acute stage when the members of the church found out that the Armenian Full Gospel Church, of which Anna Kazanjian claimed to be the pastor, held the legal title to the church. Then followed the instant suit, to set aside the deed.

On June 9, 1947, the hearing in this cause in the circuit court in chancery was adjourned and an election ordered by the trial court to determine this question:

"Shall the church property at No. 13242 Lincoln avenue, Highland Park, Michigan be deeded by the United Armenian Brethren Evangelical Church to the Armenian Full Gospel Church?"

Originally, eligible voters were by said order confined to the 34 adult members listed as members of the Armenian Full Gospel Church in 1939 by defendants' exhibit 1, and those members of plaintiff church who were adult members of plaintiff church in 1939 and as certified to be such members by the secretary and president of the plaintiff church. Later this order was amended to provide that a majority of the votes cast by the aforesaid eligible members should govern the election.

From that order the plaintiff appealed, and this Court in *United Armenian Brethren Evangelical Church* v. *Kazanjian,* 320 Mich. 214, 217, said:

"In the case at bar, the order was an improper judicial interference with the internal management of the church in ecclesiastical matters. The question of property rights should have been determined by

the trial court, after opportunity for both sides to present their proofs. For these reasons, the order directing the holding of an election must be set aside."

The case was remanded to the trial court to give both groups to the controversy an opportunity to present their proofs. Hearings were resumed, resulting in the decree for the defendants from which plaintiff now appeals. On the present appeal the merits of the controversy and the legal aspects of the case are before us for consideration. The record shows the chain of events and the facts which led up to the culmination of the controversy in 1945. It is appellant's contention that the warranty deed by which the defendant corporation obtained the title to the church property had been secretly, unlawfully and fraudulently obtained and recorded by the defendant Anna Kazanjian without revealing the same to the plaintiff church organization, and without consideration. The defendants claim that there was no connection between them and the Central Committee of the Armenian United Brethren Church of America, either by Anna Kazanjian, or the corporate defendant, or by the unincorporated group which existed prior to 1939.

It is a fair conclusion from the record that the defendant Anna Kazanjian at the time the deed in question was executed and prior and subsequent thereto was a member of the appellant church group and subject to the discipline and authority of the Central Committee of the Armenian United Brethren Churches of America. While the evidence is conflicting, there is ample evidence to show that both groups involved in this controversy, both before and after the defendant's incorporation in 1939, felt themselves bound to the Central Committee. Defendant Anna Kazanjian, in effect, repudiated such

relationship in 1945, but that does not affect the situation in 1939 at the time the property was transferred.

Nor does an inquiry into this matter violate the principle set forth in *United Armenian Brethren Evangelical Church* v. *Kazanjian, supra,* and cases cited therein. We are not now ordering any ecclesiastical action to be taken but rather are determining a question of property rights, and to accomplish this it is necessary that we ascertain the facts, as they appear in the record. It establishes that the plaintiff corporation is the equitable successor in interest to the unincorporated voluntary association formed in 1929.

The record is convincing that the Detroit United Armenian Brethren Evangelical Church, as an ecclesiastical organization, was affiliated with the Armenian United Brethren Churches of America and within the jurisdiction of the "Central Committee." In this organization were Armenian United Brethren Churches in Philadelphia (Pa.), Camden (N. J.), Boston (Mass.), Providence (R. I.), Waukegan (Ill.), Patterson (N. J.), New Haven (Conn.), and Detroit. The Central Committee adopted bylaws to govern the work of the churches. It is significant that one of the bylaws prevented Anna Kazanjian from becoming the pastor of a church. Since 1929, and until she was deposed by the Central Committee in 1945 as a minister of the church, Mrs. Kazanjian was a member of the Armenian United Brethren ecclesiastical organization.

Mrs. Kazanjian claims that during the time from the incorporation of the defendant Armenian Full Gospel Church in October, 1939, until the controversy came to a final head in 1945, she was not under the Central Committee, but was operating separately from the Armenian United Brethren Church organization, as a member of and the pastor of the Armeni-

an Full Gospel Church. The evidence does not support the claim. It shows that until December 17, 1945, she was recognized by the Central Committee as a member of the plaintiff group. She attended conventions and took part as a delegate from the Detroit branch of the United Armenian Brethren Church. Her expenses as a delegate were paid by the church, and she reported back to the church group what had happened in the convention. The record fully establishes that the defendant Anna Kazanjian kept the fact of the incorporation of the Armenian Full Gospel Church and the deed of the church property to that corporation in 1939 as a secret from the other members of the United Armenian Brethren Evangelical Church, and from the Central Committee, until sometime in 1945. During that time she continued to worship in the church and apparently was a member of that church. The defendants in claiming ownership of the church property rely on the claim that the defendant Armenian Full Gospel Church is the last grantee in the legal chain of title to the property, plus the fact that the plaintiff was not legally incorporated as an ecclesiastical corporation until 1946, hence their claim that it has no legal right in the chain of title to the property. But equity will look through and behind the legal entity of corporate existence whenever necessary to prevent injustice or to right a wrong.

The record convincingly establishes that the Detroit Armenian Brethren Church, from its inception in 1929, has been and still is under the jurisdiction of the Armenian United Brethren Churches of America, and within the supervision of the Central Committee of that ecclesiastical organization; that until sometime in 1945, Anna Kazanjian, as a member of the church, recognized the authority of the Central Committee; that one of its regulations prevented her from being the pastor of an affiliated

church; that notwithstanding that fact, she assumed to act as the pastor of the plaintiff church organization; that in 1939 she incorporated the defendant Armenian Full Gospel Church without revealing that fact to the members of the plaintiff church organization, with herself as the pastor and the members of her family in control of the finances;* that she caused the title of the church property to be transferred from herself and others as trustees for the plaintiff church organization to the defendant Armenian Full Gospel Church which obviously was under her control; that this transfer was not disclosed to the members of the plaintiff organization, nor was it authorized by them or by the Central Committee. We are led to the conclusion that said deed, without actual consideration, under all of the circumstances shown by the record was a fraud upon the plaintiff church organization, and must be set aside. The plaintiff corporation is the equitable successor to the rights of the voluntary ecclesiastical organization whose members incorporated it, and has the right to own the church property, and to its possession, to the exclusion of the defendant Armenian Full Gospel Church.

The instant situation comes within the principle laid down in *Fuchs* v. *Meisel,* 102 Mich. 357, 371 (32 L.R.A. 92), where the Court said:

"It is immaterial in whom the legal title stands. One party may hold the title, and another be entitled to the use and possession of the property; or, as in this case, both may be entitled to its joint use and possession. It may be admitted for the purposes of this hearing that the title is in the local society or its board of trustees. The question is not, as in many of the cases cited in the briefs of counsel, in

---

* Her son-in-law, Joseph Kurkjian, testified:

"I was treasurer since August, 1939, and handled all of the funds jointly with my wife. I was elected treasurer. * * * I was elected in Mrs. Kazanjian's house."

whom is the title to the property? but, in whom is the right to its use for religious worship both as pastor and layman? * * * The question presented relates exclusively to property rights, over which the proper courts have almost universally exercised jurisdiction. If the defendants' position be the true one, it follows that they are in no manner bound to the faith and tenets of this church, and that they may withdraw, and take the property to any other denomination of Christians. * * *

"The defendants and the members of this church undoubtedly possessed the right to withdraw from it, with or without reason. But they could not take with them, for their own purposes, or transfer to any other religious body, the property dedicated to and conveyed for the worship of God under the discipline of this religious association; nor could they prevent its use by those who chose to remain in the church, and who represent the regular church organization."

In *Borgman* v. *Bultema*, 213 Mich. 684, 689, 702, the situation was in some respects similar to the one here at bar. There the synod, the proper governing body, had removed the defendant Bultema on the ground that his teachings were in conflict with the confession of faith of the church. Plaintiffs brought suit to enjoin the defendants from further control of the property of the church involved. This Court said:

"No one disputes, where property is dedicated to the use of a religious denomination it cannot thereafter be diverted to the use of those who depart from that faith, but must remain for the use and benefit of those who still adhere to the faith. * * *

"I must conclude, therefore, that the defendants have been properly and legally removed from their respective offices by the duly constituted authorities of the church, and consequently they are no longer entitled to hold, manage and control the properties of the church by virtue of their holding the offices of minister and deacons and elders."

In *Hanna* v. *Malick* (syllabus), 223 Mich. 100, the Court said:

"Where the articles of incorporation and the by-laws of a local Orthodox Greek Church, as drafted and adopted by the original incorporators, who were natives of Syria, clearly express the intention to bring the church under the supreme authority and jurisdiction of the Patriarch of Antioch, those who adhere to that declaration of faith and recognized jurisdiction are entitled to the possession, control, and use of its property for its declared purpose as against those seceding from the original organization and seeking to divert its use and control to the jurisdiction of a Holy Russian Synod or patriarch."

While there are no articles of incorporation or bylaws here which expressly purport to bring the church under the jurisdiction of the Central Committee, the evidence produced at the trial effectually demonstrates that such was the intent and purpose of the members of the plaintiff corporation's predecessor, the Detroit Armenian Brethren Church.

Appellees contend that appellant has waited too long to set aside the deed, and is guilty of laches. There is no merit to the contention. General knowledge of the facts did not become known to the plaintiff group until 1945, and they very properly first exhausted their ecclesiastical remedies before resorting to action in the court. This Court has held on numerous occasions that mere lapse of time is not sufficient to bar equitable relief. *Ripley* v. *Seligman*, 88 Mich. 177; *Barney* v. *Barney*, 216 Mich. 224; *Collins* v. *Lamotte*, 244 Mich. 504; *Upell* v. *Bergman*, 246 Mich. 82; *Chamski* v. *Wayne County Board of Auditors*, 288 Mich. 238.

A decree may be entered in this Court setting aside the deed from the trustees to the defendant Armenian Full Gospel Church, quieting title in the plaintiff, and permanently enjoining the defendants

from interfering with plaintiff's possession of the church or the right of members of the plaintiff church to worship therein. The decree may also provide for remanding to the circuit court for enforcement thereof, with costs of both courts to the appellant.

BUSHNELL, C. J., and SHARPE, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.