MICHIGAN CONGREGATIONAL CONFERENCE *v.*
UNITED CHURCH OF STANTON.

1. RELIGIOUS SOCIETIES—WITHDRAWAL OF MEMBERS—STATUS OF PROPERTY.

Members of a church who withdraw therefrom may not, in so doing, take with them, for their own purposes, or transfer to any other religious body, property previously conveyed to, or dedicated to the use of, the religious denomination·from which they are withdrawing or one of its member churches, as such property must remain for the use and benefit of adherents to that denomination or those who represent it.

2. SAME—CONGREGATIONAL CHURCH—INJUNCTION.

Members of a Congregational church are entitled to injunctive relief to prevent use of the property of the church for other than Congregational church purposes and interference with plaintiffs' use thereof for such purposes.

3. SAME—CONGREGATIONAL CHURCH—LACHES.

The defense of laches may not be urged against plaintiffs, consisting of the State Congregational Conference and certain members of a local church desirous of having its property not diverted from use for Congregational church purposes, where plaintiffs were lulled into a false sense of security by the continued payment of annual assessments and by inclusion of provisions in articles of association of transferee church that members should worship and labor together according to the discipline, rules and usage of the Congregational church for nearly 10 years after execution of deed transferring the property.

4. SAME—DEDICATION—ECCLESIASTICAL CONTROL.

The continued use of church property for the use and benefit of adherents to the denomination for whose use it had been conveyed or dedicated is not affected by the degree of authority possessed or actually exercised in ecclesiastical affairs by the denomination over its member churches.

REFERENCES FOR POINTS IN HEADNOTES
[1–5, 9] 45 Am Jur, Religious Societies, §§ 54, 55, 67.

5. SAME—CONGREGATIONAL CHURCHES—LOCAL AUTONOMY IN ECCLE-
SIASTICAL AFFAIRS—USE OF PROPERTY.

The theory that the full autonomy in ecclesiastical affairs re-
posing in the individual congregation in Congregational
churches carries with it the right of a majority of its member-
ship to make such disposition of church property as they may
desire is untenable in view of applicable statutory provisions
relative to the incorporation and regulation of Congregational
churches which exclude its use for other than Congregational
church purposes (CL 1948, § 458.301 *et seq.*).

6. SAME—CONGREGATIONAL CHURCH—NONDENOMINATIONAL CHURCH—
AMENDMENT OF ARTICLES—STATUTES.

Decree, in suit to enjoin use of property for other than Congre-
gational church purposes, setting aside amendments to articles
of incorporation of transferee church which had not been or-
ganized under Congregational church act and enjoining officers
and members from amending such articles so as not to violate
that act was error, since the provisions of such statute do not
apply to a corporation not organized thereunder (CL 1948, §
458.301 *et seq.*).

7. SAME—PASTORS—COURTS—PROPERTY.

Provision of decree enjoining officers and members of a defendant
church from permitting certain persons, under certain circum-
stances, from serving it as pastor was error, since courts may
concern themselves, in church disputes, with property rights
only and not with the ecclesiastical affairs of the church.

8. SAME—INJUNCTION—PARTIES—CONGREGATIONAL CHURCHES.

Addition as parties plaintiff of members of local Congregational
church who had signified their desire for continued adherence
to the Congregational denomination *held,* proper in State Con-
gregational Conference's suit to enjoin use of church property
by a nondenominational church to which had been transferred
the property of the local church.

9. SAME—QUIETING TITLE—CONGREGATIONAL CHURCH—NONDENOM-
INATIONAL CHURCH.

Title to church property which had formerly been used by local
Congregational church and which was transferred by it to non-
denominational church is quieted in State Congregational Con-
ference and plaintiff members of the local church who evidenced
their desire for continued adherence to the Congregational
denomination for Congregational church purposes as against
claims of transferee church.

REID, C. J., and BOYLES and BUSHNELL, JJ., dissenting.

Appeal from Montcalm; Holbrook (Donald E.), J., presiding. Submitted November 13, 1951. (Docket No. 88, Calendar No. 44,856.) Decided June 4, 1951.

Bill by Michigan Congregational Conference, a Michigan corporation, against United Church of Stanton, a Michigan corporation, to dissolve defendant, set aside amendments and articles of association and enjoin use of property for other than Congregational church purposes. Decree for plaintiff. Defendant appeals. Affirmed as modified.

*Warner, Norcross & Judd* and *Leonard D. Verdier, Jr.,* for plaintiff.

*J. A. Weitzel,* for defendant.

Reid, C. J. (*dissenting*). Plaintiff Michigan Congregational Conference filed its bill to obtain a decree dissolving defendant corporation. In an amendment to the bill of complaint, plaintiff prayed among other things that certain amendments to defendant's articles of incorporation be set aside, and also prayed for an injunction restraining defendant from using its church property for other than Congregational church purposes and for a decree that plaintiff as the representative of certain dissatisfied minority members of defendant church, is entitled to the use and possession of the church property of defendant. From a decree awarding plaintiff part of the relief prayed for, defendant appeals.

This action was begun September 7, 1949. Defendant church was incorporated August 27, 1937. Before that there was a First Congregational church of Stanton and a Methodist Episcopal church of Stanton. In the year 1931, the Methodist Episcopal church building burned and the Methodist Episcopal church received $1,000 as insurance. The members

of the First Congregational church invited the Methodists to use the Congregational church for worship purposes, which the Methodists did. This arrangement continued until the incorporation of defendant. The Methodists decided that they would not rebuild their church, but would join with the Congregationalists in forming a new corporation. The First Congregational church owned the church building and the parsonage, together with the land on which the church was situated, and the Methodists had the $1,000 of insurance money, which they turned over to the defendant at the time of its incorporation.

Defendant's articles of incorporation, among other things, provided:

"Fourth, The members of said church or society shall worship and labor together according to the discipline, rules and usage of the Congregational church in the United States of America as from time to time authorized and declared by the National Council of the Congregational Churches of the United States of America.

"Fifth,   *   *   *   The additional purposes for which said church is to be incorporated are as follows:   *   *   *

"f. To succeed to the legal rights and powers of the First Congregational Church of Stanton, and the First Methodist Episcopal Church of Stanton, and

"g. To worship and labor together according to the rules and usages of the Congregational Churches in the United States as from time to time declared and adopted.   *   *   *

"Seventh: The members of the First Congregational church and the members of the First Methodist Episcopal church, both of Stanton, Michigan, in good standing at the time of the incorporation of the United Church of Stanton, and such other persons as may desire to express their faith and devo-

tion to Jesus Christ and *their loyalty to the ideals of said church,* may become members of the United Church of Stanton, Michigan." (Italics supplied.)

It can be .argued that the original articles of incorporation of the defendant, in article 7, by prescribing that applicants for membership manifest their "loyalty to the ideals of said church," (*i.e.,* defendant), instead of loyalty to the discipline, et cetera, of the National Council of the Congregational Churches, manifested an intent inconsistent with the intent expressed in articles 4 and 5, as quoted herein, and that by article 7 the incorporators expressed their intent to be an independent church. It can be further argued that the intent expressed in articles 4 and 5 was at best an intent to carry on temporarily an arrangement not intended to be permanent.

Some of the members of the First Congregational Church of Stanton and some of the members of the First Methodist Episcopal Church of Stanton, organized defendant corporation. The articles of incorporation were prepared under the Michigan general corporation act, PA 1931, No 327 (CL 1948, § 450.1 *et seq.* [Stat Ann § 21.1 *et seq.*]). No question is raised in this case but that an ecclesiastical corporation, being for a lawful purpose, and not within the excepted purposes listed in section 3 of the act (CL 1948, § 450.3), may be formed under said act. No other act is cited by counsel in this case, under which a nondenominational church may be incorporated.

PA 1901, No 53, as amended by PA 1913, No 298 (CL 1948, § 458.301 *et seq.* [Stat Ann § 21.1881 *et seq.*]), provides for incorporation of Congregational churches and among other things provides, in section 9 thereof (CL 1948, § 458.309 [Stat Ann § 21.1889]), that any church or religious organization whether

incorporated or unincorporated, may place itself under the provisions of said PA 1901, No 53. The defendant church has never placed itself under the provisions of PA 1901, No 53.

On August 2, 1937, the First Congregational Church of Stanton, which was then in the process of being dissolved, conveyed its church property by warranty deed to the United Church of Stanton, defendant, the said property being described as follows:

"Lots 5 and 7, in block No 21, and also lots 5 and 7 in block No 22, all in the village now city of Stanton aforesaid, according to the recorded plat thereof, which said plat is recorded in the office of the register of deeds for the said county of Montcalm, in liber 30 of plats on pages 162, 163."

The deed was recorded in liber 235 of deeds, page 227, on September 17, 1937. This deed designates the United Church of Stanton as an ecclesiastical corporation and contains as a restriction only the following:

"Said described premises shall be used for religious purposes only by the said party of the second part hereto and for no other purpose."

The deed also recites that it was made pursuant to a resolution unanimously adopted by the members of the First Congregational Church of Stanton and also by its board of directors.

Upon the organization of defendant, the Methodist church contributed its insurance money which was used in remodeling and reconditioning the church building.

Defendant has been functioning as an ecclesiastical corporation ever since its organization. It paid to the Grand Rapids Association of Congregational Christian Churches per capita tax payments for the years 1937 to 1946, and none since 1946. Defendant

claims such payments were made merely to please
a few of its members and not as an acknowledgment
of the existence of an obligation to pay such taxes.
Defendant has had 3 ministers, none of them being
Congregational. The pastor at the time of com-
mencement of suit was Rev. Joseph Palmer. Plain-
tiff's bill alleges that the defendant's pastor has no
standing as a Congregational minister. The record
is barren of any showing that from the very in-
corporation of defendant, August 27, 1937, until
October 15, 1948, when 22 members of defendant
church wrote to the Grand Rapids association com-
plaining that the defendant church had ceased to
function as a Congregational church and requesting
an investigation, any discipline, rule or usage was
exercised, communicated or explained by plaintiff or
anyone on behalf of plaintiff conference or those
persons who are represented by plaintiff or on be-
half of the State council or national council of Con-
gregationalists to rectify any action of defendant or
to enforce any rule or explain any usage of Congre-
gationalism to defendant.

The bill was filed September 7, 1949.

On December 21, 1948, the United Church of
Stanton amended its articles of incorporation and
filed its certificate of the amendments with the
Michigan corporation and securities commission.
The principal amendments consisted of amending
article 4 by providing that the members of the
church shall worship and labor together according
to the discipline, rules and usage of the United
Church of Stanton as from time to time authorized
and declared by the United Church of Stanton, and
also of amending subdivision (g) of article 5 by
stating that one of the purposes of the church is
to worship and labor together according to the rules
and usage of the United Church of Stanton, as
from time to time declared and adopted.

During the taking of testimony, defendant sought to introduce testimony on the part of certain members of defendant church as to what they intended or thought to be the purport of the incorporation, as to whether the new corporation was to be a Congregational church or not. On objection, the court excluded the testimony, as to the propriety of which ruling we entertain no doubt.

Upon the introduction in evidence of testimony concerning the amendments to defendant's articles of incorporation, plaintiff claimed to be taken by surprise by such testimony and requested leave to amend its bill of complaint to meet the new situation created by the matters recited in the amendments. Defendant announced it had no objection.

Whereupon, plaintiff amended the bill to include among other new matter, a statement of additional relief, including relief as though plaintiff were representing some 22 petitioners who petitioned plaintiff to examine into the charge of such petitioners that defendant was extinct as a Congregational church, and the amended prayer of the bill included a prayer that plaintiff as representative of the 22 petitioners be decreed to be entitled to the possession and use of the church property of defendant and that defendant be enjoined from further use of the same, to which latter amendment to the prayer of the bill defendant did not consent. However, we consider allowance of the amendment was within the sound discretion of the trial court, and that the discretion was not abused. The amendment to the prayer properly stands.

The trial court in a lengthy opinion recites the history and achievements of the Congregational church in the United States. The court concluded that the instant case is governed by the case of *Hanna* v. *Malick*, 223 Mich 100. Defense counsel has pointed out several matters which differentiate

the situation of defendant church and the majority of its members in control of its government, from the situation of the members of the Syrian church in the *Hanna Case.*

In the first place, it should be noted that among Congregational churches, in general, the government is vested in the local church organization; that is, the government is in the hands of the members of the local organization, whereas in the Syrian church the government is apparently in the hands of the bishop; the local members seem to have a subordinate position in the Syrian church. However, the exact form of the Syrian church government is not set forth in the opinion in the *Hanna Case.*

Webster's New International Dictionary (2d ed), Unabridged, defines congregationalism as:

"1. That system of church organization which vests all ecclesiastical power in the assembled brotherhood of each local church.

"2. The faith and polity of the Congregational churches; a system of faith and practice common to a large body of evangelical Trinitarian churches, which recognize the local brotherhood of each church as independent of all dictation in ecclesiastical matters but are united in fellowship and joint action, and to whose membership the designation 'Congregationalists' is generally restricted."

The constitution of the general (national) council of Congregationalists contains the following:

"We stand for the autonomy of the local church and its independence of ecclesiastic control."

Secondly, defendant claims that it was the intention of those who formed and incorporated the defendant church that defendant should be free from the control of State and national conferences of Congregationalists, and an inference favorable to such claim of defendant is to be drawn from the

adoption in the articles of incorporation, of the name "The United Church of Stanton." The omission of the word "Congregational" from the name would be most unusual for a church if it were to be of that particular denomination, and the name actually adopted is a strong indication that defendant church did not intend to make itself a member of any denomination and of itself indicates a union of Christians of different denominations into 1 nondenominational church. The Congregational church incorporation act, section 2, CL 1948, § 458.302 (Stat Ann § 21.1882), requires that the word "Congregational" appear in the name of a Congregational church incorporated under said act.

Thirdly, without anything corresponding thereto in the defendant church in the instant case, the Syrian Greek Orthodox Church was a banding together of Christians of the same race, in a land foreign to their nativity, of the same language, and inspired by their common reverence for the church of their native land to preserve the continuity of 19 centuries of Christian church history.

Fourthly, the church property in the *Hanna Case* was purchased in the name of and dedicated to the Syrian Greek Orthodox Church, out of the funds and by the efforts of Syrians for that particular church's purposes. In the instant case, the deed was taken in the name of the defendant church, partly representing the interests and activities of Congregationalists, and partly the title so taken represented the contribution of Methodists and persons of Methodist faith who had been habituated to work together under that name and for the Methodist faith.

Fifthly, in the *Hanna Case,* the priest of the Syrian church had always been of the Syrian Greek Orthodox Church, whereas in the instant case, the

pastors of the defendant church have all been of other than the Congregational church.

Sixthly, in the *Hanna Case,* all the members of the church in question had consistently been of that faith, whereas in the instant case some of the members have been Congregationalists and some Methodists. In the *Hanna Case,* there was always a consistent congregation of 1 faith, but in the instant case there was a merger of 2 churches.

If it had been the intention of those who formed the merger of the 2 churches in the instant case that the resulting united church should be Congregational, there was no necessity whatever for the dissolution of the First Congregational Church of Stanton; that church could have simply received the Methodists into the Congregational church and accepted the Methodists' contribution to the funds of the continuing Congregational church. The fact of the dissolution of the Congregational church speaks strongly for the contention of defendant, that the new church was simply to be independent of any denomination, with willingness to follow the teachings of the Congregational church, but not to be subject to the authority or control of the plaintiff, or the Congregational national council.

We conclude that the *Hanna Case* does not govern the instant case to the extent of warranting the relief sought by plaintiff or any part of it. However, in the *Hanna Case,* the following appears on page 117:

"An entirely independent church may be organized and assume to be governed by certain laws, creeds and doctrines of faith as promulgated by some other established church, yet it would not necessarily become a subordinate part of such regularly established church or amenable to its authority."

We approve the above statement and consider that it points out the correct path for decision of the instant case.

The record contains no showing whatever that during the years 1937 to 1946 while defendant paid annual per capita tax to the Grand Rapids Association of Congregational Christian Churches, that plaintiff conference ever received defendant church into its conference, accepted any delegate from defendant church as a member of its conference, ever notified defendant of the meetings of the conference, ever admonished or offered to discipline defendant church for having pastors occupy its pulpit who were not Congregationalists, nor that plaintiff by pamphlet, letter or other communication ever exhorted defendant church or any of its members on the subject of the distinctive and characteristic doctrines, ideals or methods of Congregationalism or the government or procedure of Congregational churches. There are thus no equities in favor of plaintiff in its proper capacity in which it filed its original bill.

PA 1901, No 53 (CL 1948, § 458.301 *et seq.* [Stat Ann § 21.1881 *et seq.*]), provides certain rights to and requires certain duties of such ecclesiastical organizations as incorporate under its provisions or make themselves subject thereto. Defendant corporation did not incorporate under said Act No 53 nor render itself subject to its provisions. Said statute is without applicability to the issues raised by the parties in this case. Plaintiff has no authority to require the dissolution of defendant corporation; the court was without authority to dissolve defendant corporation under the pleadings and proof in the case, nor did the trial court undertake so to do.

We are not to be understood as ruling that the State, under our State and Federal Constitutions, has any right to set up plaintiff as a tribunal to

determine what doctrines the defendant shall cause to be preached.

As to those members of defendant church who are represented by plaintiff, it is to be noted that so far as the record discloses, none of such members during the period 1934 to 1946 ever protested against defendant church being served by ministers who were not of Congregational affiliation imbued with the characteristic doctrines of Congregationalism, nor have such dissatisfied members of defendant endeavored in any way to cause Congregationalism to be preached from the pulpit of defendant church or expounded at any meeting of defendant church nor have they sought in any way to cause that Congregationalism be taught, expounded or enforced in defendant church.

We conclude that the 22 members now represented by plaintiff are subject to a charge of laches. If they ever had any rights such as now claimed for them by plaintiff, such rights have been lost through laches. We are not persuaded that such members ever had any such rights as plaintiff seeks to assert for them.

Having in mind the language of the *Hanna Case,* at page 117, above quoted, we consider that defendant church in the original incorporation assumed to be an entirely independent church, assumed to adopt the general religious teachings of the national body of the Congregational churches, without becoming or intending to become subordinate to such national body or to plaintiff conference, or amenable to the discipline of such national body or conference.

It would be self-contradictory to assert the autonomy of the local church and its independence of ecclesiastic control and still assert that the property of the local church, its meeting house, is subject to the control of plaintiff conference or any other con-

ference. Adherence to any conference, State or national, is always and all the time voluntary on the part of the local Congregational church.

Plaintiff practically concedes it has no right to control over the real estate of defendant, for which reason plaintiff asked leave to amend so as to declare itself the agent of dissident members of the congregation of defendant, and continue the suit on behalf of the dissidents. The deed to defendant was consented to by all of the then members of the First Congregational church of Stanton; their deed so recites. There were left no adherents of Congregationalism as members of the dissolved First Congregational church of Stanton. None of the 22 dissidents that plaintiff now claims to represent, have any right to represent the original First Congregational church of Stanton. If any former members of the First Congregational church of Stanton have now changed their minds, their deed to which they consented bars them from assertion of rights as remaining "faithful" Congregationalists.

The nature of Congregationalism and circumstances of the instant case are such that the several Michigan cases cited by Justice DETHMERS, of which the *Hanna Case, supra,* is representative, are without applicability. Plaintiff is without color of right in the instant case as an ecclesiastic organization to assert title to the church property of the local church in question. Plaintiff is without right as representative of the 22 dissidents to assert any right to the church property in question of defendant (a) because none of the dissidents can be classified as Congregationalists who remained "faithful" as such at the time the church property was deeded to defendant by unanimous consent of the Congregationalists; and (b) because under Congregational church polity, the majority of any local church represent all there is of Congregationalism in such

local church and the minority in any congregation is without right to carry on in the name or for the purpose of the local church.

The decree appealed from should be reversed. The decree of this Court should be entered dismissing the bill of complaint. Costs to defendant.

Boyles and Bushnell, JJ., concurred with Reid, C. J.

Dethmers, J. I am unable to concur with Mr. Chief Justice Reid in reversal, although I am of the opinion that the decree of the trial court ought, in certain particulars, to be modified.

It is the well-established law of this State, declared in *Fuchs* v. *Meisel,* 102 Mich 357 (32 LRA 92); *Borgman* v. *Bultema,* 213 Mich 684; *Hanna* v. *Malick,* 223 Mich 100; and *United Armenian Brethren Evangelical Church* v. *Kazanjian,* 322 Mich 651, that while members of a church undoubtedly possess the legal right to withdraw from it, with or without reason, they may not, in so doing, take with them, for their own purposes, or transfer to any other religious body, property previously conveyed to, or dedicated to the use of, the religious denomination from which they are withdrawing or one of its member churches, but such property must remain for the use and benefit of adherents to that denomination or those who represent it. Not inconsistent is the earlier case of *Wilson* v. *Livingstone,* 99 Mich 594, when viewed as having been predicated on the theory that the property involved in that case had not been dedicated to the use of any religious denomination.

The property involved in the instant case belonged, originally, to the First Congregational Church of Stanton and was, as such, dedicated to the use of the religious denomination commonly

called Congregational, of which the Stanton church
was a part. When, in the year 1937, members of
the First Congregational Church of Stanton dis-
solved its corporate existence and undertook to take
its property with them into the newly-incorporated
United Church of Stanton (defendant), the legality
of that attempt depended upon whether the new
organization was a part of the religious denomina-
tion commonly called Congregational. If it was not,
they could not, in leaving the Congregational de-
nomination, take the property with them into the
new church organization and convey it to the latter.
This follows inescapably from the holdings in the
above-cited cases. On the other hand, if the newly-
organized defendant church was Congregational,
then the transfer of property was, under the cir-
cumstances of this case, perfectly legal inasmuch
as it left the property still in the ownership and for
the use of a Congregational church, in which event
it follows, under the above cited cases, that the
1948 attempt, by amendment of defendant's articles
of association, to divert the property from the use
of the Congregational denomination or members
thereof was unlawful. The question, therefore, of
whether the United Church of Stanton was or was
not, when it became organized and acquired the prop-
erty in question, a Congregational church is, for the
purposes of this suit, relatively unimportant, except
as it is determinative of whether the unlawful di-
version of Congregational church property occurred
in 1937 or in 1948. In either event, plaintiffs (the
trial court added as parties plaintiff certain mem-
bers of defendant church who desired to adhere to
the Congregational denomination) are entitled to
injunctive relief to prevent use of the property
by defendant, its officers or members, for other than
Congregational church purposes and interference
with plaintiffs' use thereof for such purposes.

In this connection, we observe that even if the unlawful taking occurred in 1937, the defense of laches may not be urged against plaintiffs. In *United Armenian Brethren Evangelical Church* v. *Kazanjian, supra,* we held that defense not available because plaintiffs therein had not learned of the secret transfer of church property until shortly before suit. In the instant case, if the defendant church actually was not Congregational when organized, plaintiffs were lulled into a false sense of security by the provisions in the articles of association that members should worship and labor together according to the discipline, rules and usage of the Congregational Church in the United States of America and by the continued payment of assessments by defendant church to the Congregational Association until 1946, so that plaintiffs had no reason to suspect, until the present controversy developed, that defendant was not a Congregational church or that the property had been diverted from Congregational church ownership and purposes. In fact, plaintiffs continue to contend that defendant church is Congregational, a view in which they were upheld by the trial judge. The fact that plaintiffs, because they entertain this view, have not claimed that the transfer in 1937 was unlawful should not be considered to operate as a bar to reaching in this case the result indicated by the above-cited cases. It consistently has been the theory of plaintiffs' case that property which once had been dedicated to the use and benefit of the Congregational denomination was thereafter diverted to another use which they seek to enjoin. Whether they have misconceived the date of that wrongful diversion is immaterial.

I am not unmindful of the claimed high degree of autonomy in ecclesiastical affairs enjoyed by the individual congregation in the Congregational denomination as contrasted with some others. It

seems to me, however, of no profit in this case to consider the differences between the church government' and organization of the Congregational denomination and that of others. It is neither the concern of this Court nor in anywise determinative of the legal rights of parties whether the Congregational denomination exercised any disclipline over .defendant or ever exhorted it to more faithful observance of Congregational doctrines. The fact remains that the churches commonly called Congregational, of which the First Congregational Church of Stanton at least was 1, together form a denomination. What this Court held in the above-cited cases relative to denominational rights in the use of property dedicated thereto was in nowise made dependent upon the degree of authority possessed or actually exercised in ecclesiastical affairs by the denomination over its member churches, nor was it suggested in those cases that on the basis of such considerations exceptions might be made to the rule therein announced. In any event, such an exception is out of the question in the case of Congregational churches. The theory that the full autonomy in ecclesiastical affairs reposing in the individual congregation carries with it the right of a majority of its membership to make such disposition of church property as they may desire is utterly untenable in view of the provisions of the statute applicable to the incorporation and regulation of Congregational churches. (PA 1901, No 53, as amended [CL 1948, § 458.301 et seq. (Stat Ann § 21.1881 et seq.)]), section 7 of which provides, as relates to churches coming under its provisions, in part as follows:

"*Provided, however,* That all property of said corporation whether real, personal or mixed or whether held in fee or in trust and the income therefrom and the proceeds thereof when sold *shall,* subject to the terms of any trust or trusts relating thereto or to

any part thereof, *be held and used* by said corpora-tion *for the benefit of said church as a Congrega-tional* religious organization, *and for no other pur-pose whatsoever."*

Section 8 provides, concerning the property of any such church, that, when it is no longer used for the benefit of that church as a Congregational re-ligious organization, the Congregational denomina-tion may take certain steps leading to acquisition of title to the property.

The trial court's decree provides that the 1948 amendments to defendant's articles of association are set aside and held for naught and that defendant, its officers and members are enjoined from amending them so as to make defendant a non-Congregational church. In this the court erred. Whether or not defendant church was organized as a Congregational church in 1937, in any event it was not organized under nor did it ever vote to come under the provi-sions of PA 1901, No 53, as amended, providing for the organization and incorporation of Congrega-tional churches and, hence, the inhibition of that act against amendment of articles of association in a manner inconsistent with the provisions of that act does not apply to defendant. The court also erred in decreeing that defendant, its officers and members be enjoined from permitting certain per-sons, under certain circumstances, from serving it as pastor. In church disputes courts may concern themselves with property rights only and not with the ecclesiastical affairs of the church. *Berry* v. *Bruce,* 317 Mich 490; *White* v. *Mt. Beulah Baptist Church,* 319 Mich 392; *United Armenian Brethren Evangelical Church* v. *Kazanjian, supra.*

The trial court properly added as parties plaintiff those members of defendant church who had signi-fied a desire for continued adherence to the Con-

gregational denomination.   CL 1948, § 612.13 (Stat
Ann § 27.665); *Windoes* v. *Colwell,* 247 Mich 372.
Whatever its previous status, defendant is, since
the 1948 amendments, definitely not Congregation-
al and, accordingly, the decree of the trial court
properly provided, in effect, that defendant should
be enjoined from use of the property in question and
its officers and members from interfering with plain-
tiffs' use thereof and that the latter are entitled
thereto.   The decree should have provided for trans-
fer to and quieting of title in plaintiffs for Congre-
gational church purposes.

A decree may enter in this Court in accord here-
with.   Costs to plaintiffs.

North, Butzel, Carr, and Sharpe, JJ., concurred
with Dethmers, J.