GODBOLT v. CLINTON STREET GREATER BETHLEHEM
TEMPLE OF THE APOSTOLIC FAITH

1. EQUITY—EQUITABLE RELIEF—INTRA-CHURCH DISPUTE.
   Equity does nothing in vain; therefore trial court properly dis-
   missed plaintiff's action to have removed the allegedly im-
   properly elected pastor of their church and to reconstitute the
   church's board of deacons as it was when a dispute arose so
   that it could name a pastor in a regular manner under the
   church by-laws where the record supports the conclusion that
   a court decree could not accomplish a change in the pastorate
   of the church.

2. RELIGIOUS SOCIETIES—INTERNAL GOVERNMENT—DISPUTES—INTER-
   VENTION BY COURTS.
   Courts have traditionally been reluctant to interfere judicially
   with the internal government of an ecclesiastical body.

3. SAME — INTERNAL GOVERNMENT — DISPUTES — INTERVENTION BY
   COURTS.
   It cannot be said that a court should never interfere in disputes
   involving irregularities in the internal government of an
   ecclesiastical society; whether interference is warranted is
   determined by the facts of each case.

Appeal from Wayne, Burdick (Benjamin D.), J.
Submitted Division 1 February 6, 1968, at Detroit.
(Docket No. 2,573.) Decided January 30, 1969.

Complaint by George Godbolt and Claude Cum-
mings against the Clinton Street Greater Bethlehem

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 27 Am Jur 2d, Equity § 119; 45 Am Jur, Religious Societies
§§ 41, 45.

Temple of the Apostolic Faith, a Michigan ecclesiastical corporation, for an injunction restraining defendant from allowing anyone to hold the office of pastor unless elected in accordance with the church bylaws, for an accounting of certain moneys spent, and other equitable relief. Defendant's motion for summary judgment granted. Plaintiffs appeal. Affirmed.

*Gerald David White* (*Verne K. Maxwell*, of counsel), for plaintiffs.

*Nathaniel H. Goldstick, Edward Dobreff*, and *S. Allen Early* (*Paul J. Weiselberg*, of counsel), for defendant.

LEVIN, J. The trial judge granted the defendant's motion to dismiss at the conclusion of the plaintiff's proofs. We affirm for reasons we now state.

Bishop S. N. Hancock served the defendant, an ecclesiastical corporation, as its pastor from 1921 until his death on August 18, 1963. Plaintiffs assert that the by-laws of the church were not followed in the selection of Bishop Hancock's successor. Plaintiffs ask that an injunction issue prohibiting the present pastor, David Collins, from officiating as pastor, that the board of deacons be reconstituted as it existed at the time of Bishop Hancock's death, and that a new pastor be selected in conformity with the by-laws.

The by-laws provide that "a vacancy in the pastorate of the Church shall be filled by appointment by the Deacon Board and the District Elders of the Diocese in which this church is located, subject to confirmation by the members of the Church." The by-laws also provide that "a newly appointed Pastor

shall be accorded a trial or preparatory period of six months before his permanent installation or inaugural shall take place. If after this period has elapsed, he is approved jointly by the Deacons, Trustees and the general membership, he shall be permanently installed." Five days' notice of special meetings is required to be given.

At the time of Bishop Hancock's death there were 7 deacons. There were 2 district elders, Collins and Roland Corr of Pontiac, Michigan.

At the regular deacon board meeting held on August 27, 1963, it was decided to postpone the selection of a pastor. The following day, August 28, 1963, a special meeting of the deacons and trustees, called by Collins, was held at which 5 of the 7 deacons voted for Collins to be pastor.[1] Collins, as one of the 2 district elders, voted for himself.

There was evidence that at a meeting on October 4, 1963, 6 of the 7 deacons voted to rescind the August 28, 1963, vote. However, on November 1, 1963, these deacons apologized to Collins for having held the meeting without him and were "forgiven."

After the regular Friday service on October 18, 1963, there was a general vote of the members in favor of Collins' appointment as pastor. According to the minutes of this meeting, various church officials, including district Elder Corr, "recommended Elder Collins very highly as the most capable man to carry on the work left by Bishop Hancock" and "a standing vote of over 90% of a large congregation of more than a thousand people stood in favor of Elder David Collins being our permanent pastor." On January 12, 1964, there was another vote of the members at the Sunday morning service and Collins

---

[1] One deacon appeared at the meeting but was not present at the time of voting. One deacon voted against Collins' selection.

was formally installed as pastor, less than 6 months
after Bishop Hancock's death.[2]

While the exact tabulations of the votes at the
various membership meetings is uncertain, it ap-
pears that a majority of the members voted in favor
of Collins throughout. The minutes show that
Collins' election was ratified without opposition on
February 21, 1964, just over 6 months after Pastor
Hancock's death, at the annual business meeting of
the members duly called and convened at which a
quorum was present.

Plaintiffs' complaint was filed January 20, 1964.
On this appeal plaintiffs stress certain procedural
irregularities preceding the installation of Pastor
Collins, particularly that Elder Corr was neither
consulted nor given an opportunity to vote as a dis-
trict elder. However, as previously mentioned, Corr
appeared at a membership meeting where a vote was
taken confirming Collins' selection and the minutes
of that meeting record Corr as joining with other
church officials in recommending Collins to continue
Hancock's work.

Notice as required by the by-laws was not given
preceding the August 28, 1963, meeting. All the
deacons were, however, present at the meeting. One
deacon, the only deacon who at that meeting voted
against the selection of Collins, testified that at the
meeting he objected to the insufficiency of the notice,
to the presence of Collins and the trustees and to the
absence of Elder Corr. The trial judge made no
finding as to whether such objection was duly made
but he did find that all the witnesses spoke honestly

---

[2] The January 12, 1964, minutes contain the following statements:
"About 1100 of the saints [i.e., members] stood on their feet in
recognition and in favor of accepting these pastors [Collins and an
assistant] which Bishop S. N. Hancock left in charge of the Church.
"Opposers remaining seated were so very few and scattered that
they were indeed individually conspicuous by their sitting."

and sincerely. He further found that there was a history of calling church meetings informally without attempt to comply with the notice and statement of purpose requirements of the by-laws.

The dominant finding of the trial judge, well supported in the record, is that Pastor Collins ultimately achieved the support of the membership, as well as the deacons, although by-law requirements may not have been strictly met.

We find nothing in the record which would justify our concluding that a decree of this Court could accomplish a change in the pastorate of this church, even if such a decree could reconstitute the deacon board as it was embodied in August, 1963, and could at this late date bring about a reconsideration of the question of who shall succeed Bishop Hancock.

In a case such as this the chancellor has the utmost latitude. He is not obliged to attempt to right every wrong by issuance of a decree. Basic to this concept of flexibility is that equity does nothing in vain. If a court of equity cannot give a meaningful remedy, it will not erode its own effectiveness by entering an ineffectual decree. If the court cannot alter the outcome or benefit the plaintiff, equitable relief will be withheld.[3]

In *Meister* v. *Anshei Chesed Hebrew Congregation of Bay City* (1877), 37 Mich 542, a writ of mandamus was withheld in the exercise of the court's discretion although the member's expulsion from the congregation was irregular. It appeared that there were grounds upon which he could have been regularly removed, that his restoration would "destroy the society," and if restored he "might be at once immediately put out" again.

---

[3] See *State, ex rel. Rowland,* v. *Seattle Baseball Association* (1910), 61 Wash 79 (111 P 1055, 1057). See, also, *Dutch Cookie Machine Co.* v. *Vande Vrede* (1939), 289 Mich 272, 283; *McKee* v. *City of Grand Rapids* (1904), 137 Mich 200, 213.

"Whether the decree will prove so useless as to lead a court to refuse to give it, is a matter of judgment to be exercised with reference to the special circumstances of each case rather than to general rules which at most are but guides to the exercise of discretion." *Virginia R. Co. v. System Federation No 40, Railway Employees Department of the American Federation of Labor* (1937), 300 US 515, 551 (57 S Ct 592, 81 L Ed 789).

An additional consideration is the traditional reluctance of courts to interfere judicially with the internal government of an ecclesiastical body. See *Berry v. Bruce* (1947), 317 Mich 490, 498, *et seq.*; *Michigan Congregational Conference v. United Church of Stanton* (1951), 330 Mich 561, 579; *United Armenian Brethren Evangelical Church v. Kazanjian* (1948), 320 Mich 214. For policy reasons supporting this tradition of judicial restraint, *cf.* Chafee, The Internal Affairs of Associations Not For Profit (1930), 43 Harv L Rev 993, 1020, *et seq.*, and Comment, Judicial Intervention in Disputes Within Independent Church Bodies, 54 Mich L Rev 102 (1955).

In *People, ex rel. Blomquist, v. Nappa* (1890), 80 Mich 484, the Michigan Supreme Court declared that in the exercise of its discretion relief would be denied one questioning the regularity of the election of officers of a religious society even though "it cannot be said that the proceedings were regular" (p 488):

"It would be quite unseemly, as well as detrimental to the best interests and harmony of religious societies, if courts should interfere with their internal affairs when no property rights are involved, simply because the regularity of their proceedings may be open to question by some disaffected party."

We do not mean to be understood as saying that a court should never interfere where it is made to appear that control of an ecclesiastical body has been assumed irregularly but, rather, that on the facts of this case we think it better that we exercise our discretion to affirm the trial court's judgment dismissing this action than to take a purposeless step which might well cause undue disruption among the congregation.[4]

Affirmed.

LESINSKI, C. J., and McGREGOR, J., concurred.

---

[4] Cf. Monroe Carp Pond Co. v. River Raisin Paper Co. (1927), 240 Mich 279, 288, 289.